1646

Joyce SIMPSON, Appellant v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.

(403 S.E. (2d) 167)

Court of Appeals

---

*John E. Cheatham,* Lexington, *for appellant.*

*Rebecca Laffitte,* of *Nelson, Mullins, Riley & Scarborough,* Columbia, *for respondent.*

Heard Sept. 10, 1990.

Decided April 22, 1991.

*Per Curiam:*

Appellant Simpson commenced this declaratory judgment action seeking reformation of her auto insurance policy with respondent State Farm to include underinsured motorist coverage. The trial judge denied relief. We affirm.

In February 1985, Simpson received a premium renewal notice accompanied by an insert defining underinsured motorist coverage. She did not purchase the coverage. Nothing indicates State Farm offered the coverage to Simpson after that time.

In December 1986, Simpson changed cars on her policy. At this time, State Farm also raised Simpson's rental coverage. As a result of these changes, State Farm changed the suffix to Simpson's policy number from "H" to "I." Simpson made no changes in her liability limits or other coverages.

In February 1987, Simpson again renewed her policy. In April, she suffered injuries in an accident. Her damages exceeded the at-fault driver's liability limits. State Farm denied

her claim for underinsured motorist benefits, and she commenced the present action.

This appeal presents two questions. First, did State Farm make a meaningful offer of underinsured motorist coverage? Second, does South Carolina law require auto insurers to offer underinsured motorist coverage at every renewal of an insurance policy? We dispose of the first question under our Supreme Court's recent decision in *Jackson v. State Farm Mut. Auto Ins. Co.*, — S.C. —, 400 S.E. (2d) 492 (1991), *aff'g as modified*, — S.C. —, 392 S.E. (2d) 472 (Ct. App. 1990).

The 1985 renewal notice directed Simpson to see an enclosed insert regarding underinsured motorist coverage. The renewal notice and insert are identical to the notice and insert approved by our Supreme Court in *Jackson*. Accordingly, we hold State Farm made a meaningful offer of underinsured motorist coverage as required by *State Farm Mut. Auto Ins. Co. v. Wannamaker*, 291 S.C. 518, 354 S.E. (2d) 555 (1987).

The second question requires application of our decision in *Knight v. State Farm Mut. Auto. Ins. Co.*, 297 S.C. 20, 374 S.E. (2d) 520 (Ct. App. 1988), *cert. denied*, 298 S.C. 203, 379 S.E. (2d) 133 (1989). In *Knight*, we noted the general rule that the renewal of an insurance policy for a fixed term is a new contract, even when the renewal policy continues the terms of the previous policy. We also noted, however, that where the renewal is pursuant to a provision in the expiring policy, the renewal is an extension of the old contract. The *Knight* record was silent on whether the expiring policy obligated either party to continue the policy at the end of its fixed term.[1]

In the present case, the record contains a copy of the insurance policy. It provides that State Farm agreed to renew the policy for the next policy period unless Simpson lost her driver's license, failed to pay her premium when due, or South Carolina law otherwise permitted non-renewal. These are the only limitations on State Farm's contractual obligation to

---

[1] The record in *Knight* did not contain a copy of any insurance policies.

renew the policy at Simpson's option. We hold these policy provisions satisfy the requirements of *Knight,* and the renewals in this case were extensions of the old contract.[2]

Simpson argues the changes to her policy in December ■ 1986 resulted in a new contract, relying in part on the new policy number. She argues further that this new contract required a new offer of underinsured motorist coverage. We disagree.

The change in cars in no way affected the coverage terms of the insurance contract. The only change was a difference in premium amount, reflecting the change from a 1977 auto to a 1983 auto. In particular, there was no change in Simpson's liability coverage limits. Thus, there was no change in the availability of underinsured motorist coverage as offered in the 1985 renewal notice and insert.[3]

Similarly, the change in rental coverage did not affect the 1985 offer of underinsured coverage. The change in the policy number suffix reflects, at most, an amendment to an existing contract, not the issuance of a new contract.

For the reasons, the judgment below is

Affirmed.

---

[2] In so ruling, we are not unmindful of our Supreme Court's decision in *Zeigler v. South Carolina Farm Bureau Mut. Ins. Co.,* — S.C. —, 393 S.E. (2d) 166 (1990). The Court stated that the criteria for making a meaningful offer of underinsured motorist coverage "must be met at the time of each policy renewal." *Id.* at —, 393 S.E. (2d) at 168, *citing Knight v. State Farm Mut. Auto. Ins. Co.,* 297 S.C. 20, 374 S.E. (2d) 520 (Ct. App. 1988), *cert. denied,* 298 S.C. 203, 379 S.E. (2d) 133 (1989). Nothing in *Zeigler* indicates the Supreme Court intended to depart from the analysis set forth in *Knight.* Although not applicable at the time of the renewals and injury in the present case, we also note the present statutory definition of renewal policies: "[providing] types and limits of coverage at least equal to those contained in the policy being superseded. . . ." S.C. Code Ann. § 38-77-30(10) (1989) (effective June 4, 1987). We express no opinion on any duty to re-offer underinsured coverage when the superseding policy reduces the type or limit of coverages in the policy being superseded.

[3] We express no opinion on any duty to re-offer underinsured motorist coverage when the insured raises her liability limits, thereby increasing the amount of underinsured coverage available to her. *See* S.C. Code Ann. § 38-77-160 (1989) (insurers shall offer underinsured coverage up to the limits of the insured's liability coverage).